IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

REBEKAH A. CLEVELAND,                          No. 6:15-cv-01429-HZ

             Plaintiff,                        OPINION & ORDER

    v.

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

             Defendant.

Brent Wells
Katherine Eitenmiller
Harder Wells Baron & Manning, PC
474 Willamette Street, Suite 200
Eugene, OR 97401

       Attorneys for Plaintiff

Billy J. Williams
United States Attorney
Janice E. Hebert
Assistant United States Attorney
U.S. Attorney's Office, District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Heather L. Griffith
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Rebekah Cleveland brings this action for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act and Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

      Plaintiff applied for SSI and DIB on December 9, 2011. Tr. 242, 246.[1] Plaintiff alleged disability beginning May 31, 2010. Id. Plaintiff's application was denied initially on July 17, 2012 and upon reconsideration on September 25, 2012. Tr. 165-72, 180-84. On January 24, 2014, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 40. On March 12, 2014, the ALJ found Plaintiff not disabled. Tr. 33. The Appeals Council denied review on May 30, 2015. Tr. 1.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on bipolar disorder, social anxiety disorder, fibromyalgia, and post-traumatic stress disorder (PTSD). Tr. 275. Plaintiff was thirty-four years old at the time of the administrative hearing. Tr. 47. She obtained a GED. Tr. 276. She has past work experience as a bartender and fast food worker. Tr. 76.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 15.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See, e.g., Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 31, 2010. Tr. 19. At steps two and three, the ALJ determined that Plaintiff has the following severe impairments: depression and anxiety with a history of bipolar disorder and post-traumatic stress disorder, and fibromyalgia. Id. However, the ALJ determined that Plaintiff's impairment or combination of impairments did not meet or medically equal the severity of any listed impairment. Tr. 20. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform "light work . . . meaning she can lift twenty pounds occasionally and ten pounds frequently." Tr. 21. She can stand or walk for six hours in an eight-hour workday. Id. She is limited to simple, repetitive, routine tasks requiring no more than occasional interaction with supervisors, co-workers, and the general public. Id. At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. Tr. 31. At step five, the ALJ determined that, based on Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 32.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a

preponderance." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009)

(quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh the evidence that supports and detracts from the ALJ's conclusion.

Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d

715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the

Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see

also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the

evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; see also

Batson, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not

assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp.,

332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) not giving clear and convincing reasons for

discounting Plaintiff's credibility; (2) improperly evaluating the medical evidence; and (3)

failing to prove that Plaintiff retains the ability to perform the requirements of "other work."

Plaintiff's arguments are unavailing.

## I.    Plaintiff's Credibility Evaluation

The ALJ found Plaintiff "not entirely credible." Tr. 23. The ALJ discounted Plaintiff's

credibility because Plaintiff's testimony concerning her limitations was inconsistent with her

activities of daily living, Plaintiff provided contradictory testimony, and Plaintiff's allegations of

her limitations were not supported by objective evidence in the record. Id.

The ALJ is responsible for determining credibility. <u>Vasquez v. Astrue</u>, 572 F.3d 586, 591 (9th Cir. 2009). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. <u>Carmickle v. Comm'r</u>, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); <u>see also</u> <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ engages in two-step analysis to determine credibility: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, the ALJ must then give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (internal quotation marks omitted).

A.  Activities of daily living

Daily activities may serve as a basis for discrediting a claimant where they are inconsistent with the claimant's alleged symptoms. <u>Molina</u>, 674 F.3d at 1112. As the Ninth Circuit has explained:

> While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

Id. at 1112-13 (internal quotations and citations omitted). "[I]f, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

However, the claimant needs to "spend a substantial part of the day engaged" in such activities for the ALJ to have grounds for discounting the claimant's testimony. Id. Moreover, "the ALJ must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)).

Here, the ALJ stated that Plaintiff "appears to live a very active life which is not consistent with her overall allegation of disability or her allegations of constant pain, anxiety, and depression." Tr. 26. The ALJ summarized Plaintiff's activities as follows:

> She reported that she packs her daughter lunch, does chores like vacuuming and laundry, and takes her daughter to her friend's house. She is able to take care of her cat. She is able to perform all of her personal care needs. She reported that she can do most household chores except mopping. She chaperoned her daughter's field trip once a year.
>
> The claimant testified that [she] and her daughter do the household chores and her daughter must do the heavier chores. She is able to go shopping but tries to avoid crowds. The claimant testified that she attends parent-teacher conferences and attends her daughter's soft ball games. The claimant testified that she drives four to five times a week and takes her husband to work. She testified that she prefers to walk places and walks to the grocery store and the library. Her ability to walk to the grocery store indicates that she can then carry her groceries back home. This tends to indicate she is not as physically limited as alleged. It is also consistent with an ability to perform light work. The claimant testified that she uses the internet at the library and that she likes to read a lot. This tends to indicate she can concentrate and persist at a greater level than alleged. This is also consistent with the ability to perform at least simple tasks.

The claimant testified that sometimes she and her husband will go into town for a bite to eat but they are trying to save money for a car so they do not go out much. She testified that she has just one close friend, but noted that she does not know a lot of people in her town as they have lived there less than a year. She testified that she walks to appointments. The claimant has been in and out of shelter[s] for much of the relevant period and presumably was able to be around others while at the shelters. While the claimant is not incredibly socially active, her activities of daily living indicate she is functionally on a social level consistent with the residual functional capacity.

The claimant's level of activity clearly shows that she is not as debilitated by her impairments as she has alleged. Her records show that she has had many situational stressors to deal with in the past few years; however life stressors such as homelessness or loss of a loved one may cause difficulties but they are not disabling conditions. Now that many of her stressors have resolved, the claimant appears to be happy and satisfied with life and does not appear motivated to find work.

Tr. 26.

Plaintiff argues that the ALJ misrepresented her testimony. The Court agrees. The ALJ stated that Plaintiff attends parent-teacher conferences despite Plaintiff's testimony that she had never attended a conference and, if she had to, she would attend by telephone. Tr. 57. The ALJ indicated that Plaintiff walks to the grocery store and therefore must be able to carry groceries home, but the ALJ did not acknowledge Plaintiff's testimony that she usually is accompanied by her daughter and husband. Tr. 62. Plaintiff testified that she is "very strategic" about when she shops and she tries to go early in the morning or late at night to avoid people, confusion, and noise. Id. The ALJ wrote that Plaintiff does chores like vacuuming and laundry, even though Plaintiff testified that her daughter handles heavier chores such as vacuuming. Tr. 61. The ALJ stated that Plaintiff can do most household chores except mopping, but Plaintiff's testimony was that she needs help with all "hard" chores such as mopping and scrubbing the bathtub. Id.

As to Plaintiff's mental limitations, the ALJ stated that Plaintiff could concentrate and persist at a level greater than alleged because Plaintiff testified that she "uses the internet at the library and likes to read a lot." Tr. 26. However, Plaintiff testified that she goes to library if she

needs internet access and gave no indication as to how often she goes or how much time she

spends online. Tr. 64. Similarly, she said her "extracurricular activity" is reading, with no

indication of frequency or other details that would indicate her ability to concentrate or persist.

Tr. 63. The level of activity described by Plaintiff is not a clear and convincing reason for

rejecting her testimony. See Reddick, 157 F.3d at 722 ("Only if the level of activity were

inconsistent with Claimant's claimed limitations would these activities have any bearing on

Claimant's credibility.").

The ALJ noted that Plaintiff attends her daughter's softball games without the

qualification that Plaintiff plans her attendance to arrive at the end to avoid noise and people. Tr.

56. Finally, the ALJ appears to suggest that Plaintiff's ability to be around other people when she

had to live in a homeless shelter discredits her testimony about social anxiety, even though the

record does not support such an inference. Tr. 57-58.

Several of the other activities cited by the ALJ bear no relation to Plaintiff's ability to

work. See Fair, 885 F.2d at 603 (recognizing that many home activities "are not easily

transferable to what may be the more grueling environment of the workplace" and therefore

requiring that a claimant spend "a substantial part of his day engaged in pursuits involving the

performance of physical functions that *are* transferable to a work setting" in order to discredit an

allegation of disabling pain). The ALJ does not explain how Plaintiff's ability to pack her

daughter lunch, take her daughter to a friend's house, chaperone a field trip, or care for her cat

are transferable to a work setting. In sum, Plaintiff's daily activities are not a clear and

convincing reason to discount her credibility.


///

B.  Contradictory testimony

The ALJ discounted Plaintiff's credibility because she provided inconsistent testimony about why she was fired from her job as a bartender. Tr. 24. At the hearing, Plaintiff testified that she was fired because she slipped at work and because she reacted inappropriately to customers, her boss, and the managers. Tr. 49. However, at a medical examination held in conjunction with her worker's compensation claim, Plaintiff reported that she was fired due to an inability to lift and dump mop water. Tr. 429. In therapy, Plaintiff stated that she believed she was fired "because she was not submissive" and she was "set up." Tr. 450.

Notwithstanding these obvious contradictions, Plaintiff argues that her testimony is consistent. This argument is unavailing. Because the ALJ may discredit Plaintiff's allegations based on inconsistencies in her testimony, see Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991), this is a clear and convincing reason to discount Plaintiff's credibility.

C.  Objective medical evidence

Plaintiff argues that the ALJ improperly found that Plaintiff's testimony was inconsistent with the objective medical evidence. According to Plaintiff, the ALJ relied on records from 2009-2010 which predate Plaintiff's onset date.

While Plaintiff is correct that the ALJ summarized objective medical evidence from 2009-2010, Plaintiff overstates the ALJ's reliance on such records and ignores the extensive treatment the ALJ gave to medical records from 2011, 2012, and 2013. For example, the ALJ cited medical records from 2011 finding that Plaintiff's fibromyalgia was "well controlled with morphine," aches and pains were not a problem, she had "good thought process and interaction," she ambulated adequately and had normal range of motion, and her moods were stable with medication. Tr. 24. The ALJ cited 2012 records showing that Plaintiff's "mania seemed to be

under fairly good control," and she did not exhibit a depressed mood. Tr. 25. The ALJ cited 2013 records showing that Plaintiff was stable on medications and imaging of her right knee and thoracic spine appeared normal. Id. Plaintiff simply ignores the ALJ's summary of these medical records.

Plaintiff also contends that the ALJ misunderstands the fluctuating nature of Plaintiff's mental health symptoms. The ALJ asserts that Plaintiff's mental limitations appear to stem from situational stressors. Plaintiff perceives the ALJ as dismissing the existence of her mental health impairments and argues that her mental health diagnoses are documented and supported by objective testing. Plaintiff is correct that the mere fact that her mental health limitations may be exacerbated by situational stressors does not mean that the underlying conditions do not actually exist. The problem with Plaintiff's argument, however, is that the ALJ recognized Plaintiff's diagnoses and found her to have the severe impairments of depression and anxiety with a history of bipolar disorder and post-traumatic stress disorder. Tr. 19. Therefore, the question of whether Plaintiff's impairments are documented is not at issue. However, "[t]he mere existence of an impairment is insufficient proof of a disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). The ALJ did not dismiss Plaintiff's impairments, but instead noted situational stressors in order to explain that Plaintiff's symptoms seem to have improved as her life has stabilized.

Plaintiff does not make any other arguments as to why the ALJ erred in finding that her testimony conflicted with the objective medical evidence. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)

(citing 20 C.F.R. § 404.1529(c)(2)). Accordingly, the ALJ properly considered the objective medical evidence in discounting Plaintiff's credibility.

     D.  Overall credibility finding

In sum, Plaintiff's inconsistent testimony and a lack of support in the objective medical evidence provided the ALJ with sufficient reasons, supported by substantial evidence, to discount Plaintiff's credibility. Even though the ALJ erred in his treatment of Plaintiff's daily activities, such error was harmless. See Batson, 359 F.3d at 1197 (finding a harmless error when the ALJ's overall conclusions about claimant's credibility were supported by substantial evidence); Coleman v. Astrue, 423 F. App'x 754, 756 (9th Cir. 2011) (although court found error in one credibility finding, substantial evidence remained to support the ALJ's conclusions on credibility, including claimant's failure to follow repeated medical recommendations that she treat her pain with exercise and increased activity levels). The Court affirms the ALJ's credibility finding.

## II.    Evaluation of medical evidence

Plaintiff argues that the ALJ improperly evaluated the medical evidence by failing to fully credit the opinions of examining psychologist Jill Brenizer, treating physician Michael Hodulik, and by relying on the opinions of examining doctors Timothy Borman and John Erkkila.

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996). The medical opinion of a claimant's treating physician is entitled to "special weight" because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Rodriguez v. Bowen, 876 F.2d 759, 761 (9th Cir. 1989)

(citation omitted). The ALJ may reject the uncontradicted opinion of a treating or examining physician by providing clear and convincing reasons supported by substantial evidence in the record. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing Lester, 81 F.3d at 830-31). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). Further, an ALJ may reject a physician's opinion if it conflicts with the physician's other findings. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

Although the contrary opinion of a non-treating medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. Magallanes, 881 F.2d at 752.

It is well-established that "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v Barnhart, 278 F.3d, 947, 957 (9th Cir. 2002); see also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions"). A "physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'"

Morgan v. Comm'r Soc. Sec. Admin, 169 F.3d 595, 602 (9th Cir. 1999) (quoting Fair, 885 F.2d at 605.

    A.  Dr. Brenizer

    Dr. Brenizer conducted a psychological evaluation of Plaintiff on June 13, 2013. Tr. 830-42. Dr. Brenizer administered a psychosocial clinical interview; the Wechsler Adult Intelligence Test, Fourth Edition (WAIS-IV); the Montreal Cognitive Assessment (MoCA); and the Millon Clinical Multiaxial Inventory, Third Edition (MCMI-III). Tr. 835. Based on the WAIS-IV test, Dr. Brenizer concluded:

> [Plaintiff] has the capacity to intellectually function in the *Average* range. She has a slight weakness in auditory working memory (similar to auditory attention). Weaknesses in this area can be related to depression, anxiety, pain, or medications.

Tr. 836. As to the MoCA, which is a rapid screening instrument for mental status and mild cognitive dysfunction, Dr. Brenizer found that Plaintiff has "some mild cognitive weaknesses." Tr. 836. Finally, Dr. Brenizer administered the MCMI-III, which "gives indications of an individual's personality patterns as well as their fit with different clinical syndromes." Tr. 837. Dr. Brenizer qualified the MCMI-III results with the following statement:

> [Plaintiff's] response style may indicate a broad tendency to magnify the level of experienced illness or a characterological inclination to be self-pitying. On the other hand, the response style may convey feelings of extreme vulnerability that are associated with a current episode of acute turmoil. Whatever the impetus for the response style, [Plaintiff's] scale scores, particularly those on Axis I, may be somewhat exaggerated, and the interpretation of this profile should be made with this consideration in mind.

Tr. 837. Dr. Brenizer went on to diagnose Plaintiff with cyclothymic disorder, chronic PTSD, and sychizotypal, paranoid, and borderline traits. Tr. 839

    Dr. Brenizer opined that Plaintiff endorsed a long history of anxiety and discomfort around people, including social unease and interpersonal suspiciousness. Tr. 839. Plaintiff has a "blunt interpersonal style" and becomes angry and overwhelmed "quite easily." Tr. 840. As a

result, Dr. Brenizer concluded that an ideal job for Plaintiff "will require a more solitary setting where she does not have to interact often with others, and when she does have to interact with others the group size will need to quite small." Id. Further, Dr. Brenizer opined that until Plaintiff and her family could find stable housing (she was in a shelter at the time of Dr. Brenizer's evaluation), Plaintiff would not be capable of working at all. Tr. 841. However, Dr. Brenizer stated that, once Plaintiff found housing, her anxiety level would decrease and she would be capable of at least part-time work. Id.

Dr. Brenizer also filled out a "Rating of Impairment Severity Report." Tr. 843. In that report, Dr. Brenizer noted mild limitations in Plaintiff's concentration, persistence or pace; moderate limitations in Plaintiff's restriction of activities of daily living; and marked limitations in Plaintiff's social functioning. Tr. 843. On a "Mental Residual Function Capacity Report," Dr. Brenizer found that Plaintiff was markedly limited in the following areas: the ability to perform activities within a schedule and maintain regular attendance; the ability to work in coordination with or in proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and the ability to travel in unfamiliar places or use public transportation. Tr. 846.

The ALJ found that the testing administered by Dr. Brenizer revealed findings consistent with the evidence in the record and indicated that Plaintiff is not as limited as alleged. Tr. 25. In addition, the ALJ gave Dr. Brenizer's opinion "some weight" because some portions were

consistent with the ALJ's RFC. Tr. 30. However, the ALJ gave little weight to the opinion that Plaintiff could not work until she found stable housing, because such opinion was not a basis for finding Plaintiff disabled and, furthermore, Plaintiff had stable housing by the time of the administrative hearing. Id. In addition, the ALJ found that Dr. Brenizer's opinion was not supported by her test results and, instead, appeared to be based primarily on Plaintiff's reports of her limitations. Id. The ALJ discounted Dr. Brenizer's opinion to the extent it was based on Plaintiff's subjective reports.

According to Plaintiff, because the ALJ determined that Dr. Brenizer's findings are consistent with the evidence in the record and because Dr. Brenizer administered standardized, objective testing, the ALJ erred in discounting Dr. Brenizer's opinion as being based primarily on Plaintiff's subjective reports. Plaintiff, however, blurs the analysis of the ALJ's treatment of Dr. Brenizer's objective findings and his treatment of Dr. Brenizer's opinions regarding Plaintiff's limitations. The ALJ found that Dr. Brenizer's objective findings were consistent with the evidence in the record. Tr. 25. However, such findings indicated that Plaintiff was not as limited as she alleged. Id. For example, Plaintiff's IQ was in the average range, she had only mild cognitive weaknesses, and she had a GAF score of 60, which indicates moderate symptoms. Tr. 25.

The test results did not support Dr. Brenizer's opinion regarding Plaintiff's limitations. Tr. 30. Thus, the ALJ disregarded portions of Dr. Brenizer's opinion that were inconsistent with the RFC because they appeared to be based on Plaintiff's subjective reports rather than the objective testing. Id. In other words, the parts of Dr. Brenizer's opinion that the ALJ disregarded were those parts based on Plaintiff's testimony, which the ALJ found not credible. While Plaintiff offers a different interpretation of Dr. Brenizer's objective findings, the ALJ's

interpretation is reasonable and, thus, must be upheld. See Burch v. Barnhart, 400 F.3d 676, 680–81 (9th Cir. 2005) (upholding ALJ's decision where "evidence is susceptible to more than one rational interpretation").

Plaintiff also argues that the ALJ erred because Dr. Brenizer's assessment of Plaintiff's limitations is consistent with the assessments of Dr. Hodulik and Dr. Truhn. However, as discussed below, the ALJ properly discounted the opinions of Dr. Hodulik and Dr. Truhn. In sum, the ALJ did not err in discounting portions of Dr. Brenizer's opinion.

B.  Dr. Hodulik

Dr. Hodulik, Plaintiff's primary care physician, treated Plaintiff primarily for fibromyalgia, pain, stress, and depression. The ALJ reviewed Dr. Hodulik's treatment notes and opinions from 2009 through the time of the hearing. Plaintiff challenges the ALJ's decision to discount the weight given to Dr. Hodulik's opinions from January 2012, March 2013, and January 2014.

On January 20, 2012, Dr. Hodulik filled out a "Physical Impairment Questionnaire" and "Mental Capacity Assessment." Tr. 601. Dr. Hodulik assessed significant physical limitations, such as a need to take eight unscheduled ten to twenty minute breaks every day, an inability to lift twenty pounds or more, a need to be absent from work as a result of physical impairments three to four times a month, and an inability to sustain employment for eight hours a day, five days a week. Tr. 601-02. He also assessed significant mental limitations, including marked or extreme limitations in Plaintiff's ability to understand and remember detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; complete a normal workday or

workweek without interruptions from psychologically based symptoms; perform at a consistent

pace with a standard number and length of rest periods; accept instructions and respond

appropriately to criticism from supervisors; get along with coworkers or peers without distracting

them or exhibiting behavioral extremes; and respond appropriately to changes in the work

setting. Tr. 604-06.

The ALJ gave Dr. Hodulik's opinions little weight. Tr. 28. The ALJ discounted Dr.

Hodulik's assessment of physical limitations because they were based on Plaintiff's subjective

reports; at odds with Plaintiff's activities of daily living, such as the ability to vacuum, shop, and

do laundry; and contradicted by Dr. Hodulik's treatment records. Id. In addition, Dr. Hodulik

treated Plaintiff primarily for mental impairments, which further suggests that any assessed

physical limitations were based on Plaintiff's subjective reports. Id. The ALJ discounted both the

physical and mental limitations because Dr. Hodulik provided no explanation or basis in the

record for Plaintiff to have eight unscheduled breaks every day or to miss more than three work

days every month. Id.

On March 22, 2013, Dr. Hodulik offered another opinion of Plaintiff's limitations. In his

"Medical Evaluation," Dr. Hodulik opined that Plaintiff would have to rest for five to fifteen

minutes at a time due to muscle and joint pain, "from zero to several times a day." Tr. 687. He

also opined that Plaintiff would be unable to maintain a regular work schedule because she

would be impacted by her severe medical impairments more than two days a month. Tr. 688.

The ALJ gave this assessment little weight because it references problems such as

restless legs and headaches that were not mentioned elsewhere in the record. Tr. 28. The ALJ

also found that the degree of limitation was not consistent with Plaintiff's activities of daily

living, such as performing household chores, walking to the grocery store, and attending her daughter's sporting events and appointments.

On January 23, 2014, Dr. Hodulik offered another opinion. Tr. 951. He opined that Plaintiff was limited in her ability to interact in a job requiring her to work with the public, she would not be able to consistently work in cooperation with coworkers, and she would not respond appropriately to supervision and instruction from supervisors. Tr. 951. Dr. Hodulik noted that, as a result of Plaintiff's bipolar disorder and PTSD, she does not interact well with others, does not trust others, and is unaware of the impact that her manner of interacting has on the people around her. Id.

The ALJ assigned this opinion no weight because "it is in complete contradiction to Plaintiff's activities of daily living," such as going to the grocery store, attending her daughter's sporting events, and maintaining a relationship with her husband and one friend. Tr. 29.

Plaintiff challenges the ALJ's reasons for discounting Dr. Hodulik's opinion. First, Plaintiff contends that Dr. Hodulik's opinion is supported by objective findings noted in his own treatment records. Plaintiff points to Dr. Hodulik's observation of Plaintiff on two occasions as manic, with pressured and rapid speech. See Tr. 597, 752. In addition, Plaintiff notes that Dr. Hodulik ordered laboratory tests to check Plaintiff's lithium levels and worked with Plaintiff since 2008 to treat her fluctuating mental health symptoms. Plaintiff fails to explain how these treatment notes undermine the ALJ's conclusion that many of Dr. Hodulik's opinions were based on Plaintiff's subjective complaints. Because the ALJ properly discounted Plaintiff's credibility, the ALJ properly discounted portions of Dr. Hodulik's opinion to the extent they were based on Plaintiff's subjective complaints. Fair, 885 F.2d at 605 (ALJ's finding that treating physician's

opinion was premised on claimant's subjective complaints was a specific and legitimate reason to disregard the opinion).

Plaintiff next argues that the ALJ improperly embellished Plaintiff's activities of daily living in order to discredit Dr. Hodulik. As discussed above, the Court agrees that the ALJ mischaracterized Plaintiff's activities of daily living, including her ability to vacuum and do laundry, attend her daughter's sporting events, and go to the grocery store. Therefore, to the extent that the ALJ relied on these same activities to discount Dr. Hodulik's opinion, the ALJ erred.

Finally, Plaintiff argues that Dr. Hodulik's opinion is consistent with the record. However, Plaintiff fails to point to any medical evidence in the record in support of her argument. The record in this case is over 950 pages. The Court is "not required to comb the record" to find some reason to support Plaintiff's argument. Morganti v. Colvin, No. C 12-03511 CRB, 2013 WL 1758784, at *4 (N.D. Cal. Apr. 24, 2013) (citing Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

Furthermore, Plaintiff does not address the ALJ's decision to discount Dr. Hodulik's opinions because there was no explanation for the finding that Plaintiff required additional breaks or days off work, and Dr. Hodulik referenced physical problems that were not found anywhere else in the record. An ALJ may reject "check-off reports" that fail to explain the basis for the doctor's conclusions, Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), and opinions that are inconsistent with the medical records, Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

Instead of citing any relevant evidence, Plaintiff argues that the ALJ erred because Dr. Hodulik's opinion is consistent with the opinions of Dr. Brenizer and Dr. Truhn. As discussed above, the ALJ properly discounted the opinion of Dr. Brenizer. As to Dr. Truhn's opinion, the ALJ assigned the opinion little weight and Plaintiff does not challenge that finding. See Tr. 29 (citing Tr. 813-25).

Plaintiff also argues that Dr. Hodulik's opinion is consistent with one portion of the opinion of State agency Dr. Dennis. Dr. Dennis opined that Plaintiff "would benefit from an understanding supervisor who would be willing to work [with Plaintiff] during changes in the workplace." Tr. 99. While the ALJ afforded "great weight" to Dr. Dennis' overall opinion, the ALJ disregarded the portion regarding an "understanding supervisor" because it is not a limitation that can be addressed by vocational expert testimony and is not supported by specific evidence in the record. Tr. 31.

Plaintiff argues that Dr. Dennis' opinion is supported by specific evidence in the record because it is consistent with Dr. Hodulik's opinion. Plaintiff's reasoning is circular—she contends that the ALJ erred because Dr. Hodulik's opinion is consistent with that of Dr. Dennis; then, she contends that Dr. Dennis' opinion should have been credited because it is consistent with Dr. Hodulik's opinion. Plaintiff misses the point that the ALJ found that both Dr. Hodulik's opinion and the relevant portion of Dr. Dennis'opinion were unsupported by any specific evidence in the record. An opinion that is unsupported by any evidence in the record cannot be used to bolster a separate, unsupported opinion. In sum, the Court affirms the ALJ's decision to discount Dr. Hodulik's opinion as unsupported by the record.

///

C.  Drs. Borman and Erkkila

Plaintiff argues that the ALJ erred in assigning great weight to the opinions of Drs.

Borman and Erkkila, both of whom performed orthopedic examinations of Plaintiff to determine

the cause and severity of her on-the-job injury in relation to a worker's compensation claim.

However, while the ALJ states that he assigned these opinions great weight, he also qualified

each assessment by noting that Plaintiff appeared to have more limitations than the doctors

assessed and, thus, the residual functional capacity (RFC) is more limiting. Therefore, while the

ALJ could have been clearer about how he used the opinions of Drs. Borman and Erkkila, there

is no evidence that their opinions served to lessen the limitations noted in the ALJ's RFC.

Therefore, to the extent the ALJ erred in assigning the opinions great weight, any error was

harmless because it was irrelevant to the ultimate determination of disability.

## III.    Step Five

Plaintiff argues that the ALJ erred in finding that Plaintiff could perform "other work" at

step five of the sequential analysis. According to Plaintiff, the hypothetical posed to the

Vocational Expert (VE) failed to adequately address Plaintiff's social limitations.

In support of her argument, Plaintiff cites assessments and opinions of Dr. Hodulik and

Dr. Brenizer, as well as Plaintiff's own testimony. For all of the reasons stated above, the ALJ

properly discounted these opinions and testimony. See Stubbs-Danielson v. Astrue, 539 F.3d

1169, 1175–76 (9th Cir. 2008) (Plaintiff's argument that the ALJ's RFC finding did not account

for all her limitations failed because Plaintiff "simply restate[d] her argument that . . . the ALJ

improperly discounted her testimony and the testimony of medical experts."). Plaintiff also cites

a treatment note from a social worker at Options Counseling Services of Oregon, Inc. Tr. 450.[2]

---

[2] The treatment note states:

The Court fails to see how this note supports Plaintiff's social limitations, such that the ALJ erred in his RFC.

## CONCLUSION

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this _____9_____ day of ___September___, 2016


_Marco Hernández_

MARCO A. HERNÁNDEZ
United States District Judge

---

Met with client for individual session. Client talked about multiple stressors that occurred since our intake session. Client reports she was fired from her bar tending job last week. She states she believes it happened because she was not submissive. She feels she was set up. She processed feelings of frustration and helplessness in the face of discrimination. Client reports she is in a lot of pain from the fall at work that injured her hip. She is worried her employer will find a way to evade providing workman's compensation. Client also talked about conflict between herself and her mother and her mother and her partner. Therapist reflected and provided feedback and emotional support. Client centered therapy were used in this session. We are in the initial phase of therapy and are in the process of building rapport and trust. Next session scheduled in 1 week.